

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
# ENTERED
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 23, 2014**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT LEWIS ADKINS, SR. | § | CASE NO. 12-10314-rlj-7 |
| | § | |
| DEBTOR. | § | |

## <u>MEMORANDUM OPINION</u>

On May 12, 2014, a hearing was held on the motion of the debtor, Robert Lewis Adkins, Sr. ("Adkins"), seeking damages for willful violation of the automatic stay by creditor McLoba Partners, Ltd. d/b/a U.S. Gold Firm ("McLoba") [Docket No. 258] (the "Motion"). McLoba filed its response and objection to the Motion.

The Court has authority to decide this matter under 28 U.S.C. §§ 1334(b) and 157(b)(2); this matter constitutes a core proceeding as it concerns claims against the debtor, the automatic stay, property of the bankruptcy estate, and the administration of the bankruptcy estate. This memorandum opinion contains the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 7052 and 9014.

I.

The alleged stay violation here arises from a third party action filed by McLoba against Adkins during the pendency of Adkins's present chapter 7 bankruptcy case. The third party action was brought in the styled adversary proceeding of *Harvey L. Morton, as Liquidating Trustee of the R.L. Adkins Corp. Liquidating Trust, plaintiff, v. McLoba Partners, Ltd., d/b/a US Gold Firm, Defendant*, Adversary Case No. 13-01057 ("Morton Adversary"). The Morton Adversary was filed in the bankruptcy case of *R. L. Adkins Corp.* [Case No. 11-10241], which is also pending with this Court. The *R. L. Adkins Corp.* bankruptcy case and the *Robert L. Adkins, Sr.* individual case, along with yet a third case, *Adkins Supply, Inc.* [Case No. 11-10353], are all affiliated cases as Adkins was the principal of R. L. Adkins Corp. and Adkins Supply, Inc.

A.

In the Morton Adversary, Morton sought damages from McLoba on causes for usury and fraudulent transfers (under both federal and Texas law); Morton also requested subordination of McLoba's claim in the *R.L. Adkins Corp.* bankruptcy case under equitable subordination. McLoba responded by filing its answer, counterclaim, and a third party action that is subject of the alleged stay violation here. *See* Exhibit B to the Motion. McLoba denied any liability; it affirmatively contended that R. L. Adkins Corp., Adkins Supply, Inc., and Adkins constituted a "single business enterprise and should be treated as the same entity for purposes of the claims . . . raised . . . . Robert Adkins dominated R. L. Adkins Corp. and Adkins Supply Corp. *[sic]* and the corporate veil should be pierced and/or reverse pierced to treat the three as one with respect to McLoba." *Id*. Adkins, according to McLoba, used the two corporate entities as shams to perpetrate a fraud against McLoba. As a result of these affirmative charges, McLoba, by its

third party action, sued Adkins individually; John D. Spicer, in his capacity as chapter 7 trustee of Adkins's bankruptcy estate; Kent Ries, as chapter 7 trustee of Adkins Supply, Inc. in the *Adkins Supply, Inc.* bankruptcy case; and Adkins Supply, Inc.

Adkins submits that McLoba's third party action against him, filed during his chapter 7 case, is a clear and willful violation of the automatic stay under § 362 of the Bankruptcy Code. Adkins therefore seeks actual damages, including attorney's fees and costs, and punitive damages.[1]

McLoba argues that the third party action did not implicate § 362 of the Bankruptcy Code and thus cannot constitute a stay violation. This is based on McLoba's underlying contention that the third party action was "effectively a defense to a bankruptcy preference and fraudulent transfer action that was not and could not have been commenced before the filing of the debtor's bankruptcy case, so by its very terms, this provision of § 362 does not apply." McLoba's Response to the Motion [Docket No. 266]. McLoba submits that it was seeking no recovery against Adkins or against any assets of his bankruptcy estate. As a result, McLoba contends that Adkins has suffered no damages as a result of the third party action, except perhaps for those self-imposed by Adkins and his lawyers (presumably for attorney's fees incurred in bringing the Motion here). McLoba notes that it did not actually serve Adkins with the third party action and thus alternatively requests that in the event the Court finds a technical stay violation, that the stay be "relaxed to the extent necessary to permit its defensive actions in" this adversary proceeding. *Id.*

---

[1]Adkins also sought dismissal of the third party action against him. Since the filing of the Motion here and the hearing on the Motion, the Morton Adversary has apparently been settled, with McLoba dismissing all claims against Adkins, as well as Spicer and Ries in their respective capacities.

B.

On March 24, 2014, Jason Kathman, Adkins's attorney, sent an email to McLoba's counsel, Pete Holzer, stating that the third party action against Adkins constituted a stay violation and demanded that Adkins be dismissed from the suit.  He also advised Holzer that if he failed to dismiss Adkins by 5 o'clock the next day, he would file a motion seeking sanctions for an intentional stay violation.  *See* Exhibit C to the Motion.  Holzer responded back on the same day, saying Kathman's threat was "spurious" and that since the suit was filed in the bankruptcy court in which Adkins is a debtor, the stay does not apply.  *Id.*  He said, further, that even if there was a stay, he would get it lifted retroactively.  McLoba therefore refused to dismiss the third party action, which then caused the filing of the Motion here.

II.

The automatic stay is *the* protection afforded to an individual or entity that seeks protection under our nation's bankruptcy laws.  The coverage of the automatic stay, by the provisions of the Bankruptcy Code, is both broad and specific.  It stays the "commencement or continuation" of a "judicial, administrative, or other action or proceeding against the debtor"; it stays any similar actions to "recover a claim against the debtor"; it covers the attempted enforcement of a judgment against the debtor or the debtor's property; it encompasses any acts that seek to "obtain possession" or "control" over estate property, including any act to "create, perfect, or enforce" any lien; and it covers any act to "collect, assess, or recover a claim" against the estate.  *See* 11 U.S.C. § 362(a).  The action stayed must, however, concern rights and claims that arose before the commencement of the bankruptcy case.  *Id.*  A suit filed against a person in

chapter 7 that is based on a claim that accrued before the bankruptcy was filed—and for which permission for the filing was not first obtained from the bankruptcy court—is a clear stay violation. If done with knowledge of the bankruptcy, such action is deemed a willful stay violation for which a debtor who is an individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

## A.

In assessing McLoba's conduct here and whether it constitutes a stay violation, the Court begins with the basic set of underlying facts: McLoba sued Adkins by way of a third party action on facts and circumstances that arose prior to Adkins's bankruptcy filing. As outlined above, McLoba contends the stay is not violated because, first, the third party action was brought in an adversary proceeding that was already pending before this Court, though in a different, but related, bankruptcy case; and, second, because the third party action was filed "purely as a defensive measure." McLoba's Response to the Motion [Docket No. 266]. In support of this second point, McLoba invokes the following legal theories: "veil piercing, reverse veil piercing and other 'single business enterprise' theories" and "joint enterprise." *Id*. These "theories," according to McLoba, created a defense to the bankruptcy preference and fraudulent transfer actions asserted in the Morton Adversary. McLoba also points out that it filed its proof of claim in this bankruptcy case, the *Adkins* case, to which no objection has been filed. McLoba then notes that the claims that were part of the third party action were not a part of the claims set forth in its proof of claim.

It is difficult to follow McLoba's contention that the third party action was but a mere defense to preference and fraudulent transfer actions. *It was brought as a third party action against Adkins*. And they are not alleged as defenses to just these two bankruptcy-based causes of action. The Morton Adversary maintained claims against McLoba for usury (Counts I and II); fraudulent transfers under §§ 548 and 550 of the Bankruptcy Code (Counts III and V); fraudulent transfers under the Texas Uniform Fraudulent Transfers Act, and actual fraud (Counts IV and V); and equitable subordination under § 510(c) of the Bankruptcy Code (Count VI). The Court finds no preference claims; the causes are made under both the Bankruptcy Code and under state law. The Court fails to see how the third party action is not principally a prepetition-based cause.

McLoba's answer, counterclaim, and third party complaint stated that Adkins, along with the corporate entities and the trustees, "should be treated as being one and the same person with respect to the Plaintiff's claims against McLoba," and that all "constituted a single business enterprise and should be treated as the same entity for purposes of the claims and defenses raised in this lawsuit." Exhibit B to the Motion. Continuing with the labeling, McLoba said, "Robert Adkins dominated R. L. Adkins Corp. and Adkins Supply Corp. *[sic]* and the corporate veils should be pierced and/or reverse pierced to treat the three as one with respect to McLoba." *Id.* Finally, McLoba alleged that Adkins used the companies as shams to perpetrate fraud against McLoba. *Id.*

The Court has attempted to understand how the various legal theories asserted by McLoba might have affected the claims made against it in the Morton Adversary. The theories are, in effect, mere slogans which might have some meaning upon clarification or perhaps after

discovery was conducted.  For now, on the Motion before the Court, the Court returns to its

characterization of the present facts and circumstances: McLoba's third party action was an

action against a chapter 7 individual debtor concerning facts and circumstances that arose before

the bankruptcy case was filed.  In arguing that this does not constitute a stay violation, McLoba

relies upon the Fifth Circuit's opinion in *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d

348 (5th Cir. 2008).  The *Campbell* case concerned a statement made as part of a proof of claim

by a mortgage company to the effect that the debtors' post-petition payments would be increased

to cover an arrearage claim that arose prior to the bankruptcy filing.  The Fifth Circuit agreed

with the bankruptcy court that the escrow arrearage was a prepetition claim and that the

mortgage holder, Countrywide, was stayed from attempting to collect such amounts post-

petition.  In assessing whether this conduct constituted a stay violation, however, the court held

that since such claim was asserted in a proof of claim, it did not constitute a stay violation.  The

Fifth Circuit pointed out the obvious: that the Bankruptcy Code and Rules allow creditors to file

proofs of claim in which they assert claims, whether contingent, unmatured, or disputed, and sets

forth the procedure for a debtor to object to the claim and for the bankruptcy court's

determination of whether the claim should be allowed or not.  *Id.* at 356.  "We find no

precedence in which a court has held that asserting a right to payment in a Proof of Claim

constitutes a violation of the automatic stay."  *Id.*  The language from the opinion specifically

relied upon by McLoba is as follows:

> In fact, a number of courts, including the District of Columbia Circuit, have found
> that an automatic stay has no effect on actions that are expressly allowed under the
> Bankruptcy Code.  *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C.Cir.
> 1991).  In a case similar to ours, the Bankruptcy Court for the District of South
> Carolina put a finer point on this more general principle:

> [T]he automatic stay serves to protect the bankruptcy estate from
> actions taken by creditors outside the bankruptcy court forum, not
> legal actions taken within the bankruptcy court. The filing of a Proof
> of Claim before a bankruptcy court . . . is the logical equivalent of a
> request for relief from the automatic stay, which cannot itself
> constitute a violation of the stay . . . .

In re Sammon, 253 B.R. 672, 681 (Bankr. D.S.C. 2000); see also Rogers v. B-Real,
L.L.C. (In re Rogers), 391 B.R. 317, 324 (Bankr. M.D. La. 2008) (adopting In re
Sammon's analysis and collecting other cases that have done so).

Id. (emphasis added).

B.

The precise holding of Campbell—that the creditor did not violate the automatic stay by

including, in its proof of claim, a right to increased payments to cover a prepetition claim—does

not resolve the issue here.  Asserting a claim within a proof of claim is significantly different

from filing a third party action.  On the surface, the former is expressly authorized, the latter is

expressly stayed.  The above-quoted language concerning "legal actions taken within the

bankruptcy court" does, however, get to the nub of the issue here.  Campbell, 545 F.3d at 356.

And it is the language upon which McLoba principally relies.  Its other arguments miss the mark.

How its single enterprise, veil piercing-type theories constituted a defense or defeated the causes

against McLoba are, at least as pleaded, obscure.  The Court is forced to extrapolate inferences

about how such theories, if proved, affected McLoba's defense to the Morton Adversary.  These

are also the type of theories or claims that may belong to the trustee as a representative of

creditors generally.  See In re S.I. Acquisition, Inc., 817 F.2d 1142, 1145 (5th Cir. 1987) (holding

that alter-ego claims against a debtor and other non-debtor defendants are property of the

debtor's bankruptcy estate and thus properly brought by the debtor) (citing In re

MortgageAmerica Corp., 714 F.2d 1266 (5th Cir. 1983) (holding that claims against debtor

- 8 -

based on corporate trust fund doctrine, a charge of denuding the corporation, and fraudulent transfers under the Texas Fraudulent Transfers Act are each property of the bankruptcy estate, properly brought by the debtor)).

It is also not clear to the Court, as asserted by McLoba, how the assertion of such theories had no effect on the debtor, Adkins, or his bankruptcy estate. The Court assumes that Adkins had to defend the action in some fashion. A review of the pleadings confirms that, as alleged, these theories did arise out of the same set of facts and circumstances that were the subject matter of the Morton Adversary. Brought as a third party action, such theories and causes attempted to deflect potential liability to Adkins. Bringing such causes in the Morton Adversary identified when they were first raised; it did not resolve when they arose. Adkins could not simply ignore these charges.

The Fifth Circuit in *Campbell*, in holding that an assertion in a proof of claim of increased payments to cover a prepetition claim is not a stay violation, noted that many courts "have found that an automatic stay has no effect on actions that are expressly allowed under the Bankruptcy Code." *Campbell*, 545 F.3d at 356 (citing *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991)). To "put a finer point on this more general principle," the court then quoted from the *Sammon* opinion. *Id.* The issue, then, is whether the holding of *Campbell*, which arose in connection with a claim made in a proof of claim, can be extended to a third party action filed in an adversary pending in a different bankruptcy case, but before the same bankruptcy court. This would seem, at least to this Court, to be stayed by the clear language of § 362(a) of the Bankruptcy Code.

The *Campbell* court looked to *Sammon* and the extensive analysis provided by the *Sammon* opinion. Its reliance on *Sammon* is understandable. The facts of *Sammon* are strikingly similar to the facts of *Campbell*. In *Sammon*, chapter 13 debtors, John and Judith Sammon, objected to the proof of claim of the Internal Revenue Service and sought damages and other relief against the IRS, contending the IRS violated the automatic stay by failing to credit a $13,600 payment made by the Sammons which, in effect, improperly increased the amount of its claim. The court, predictably, held such action was not a stay violation. In reaching its decision, the bankruptcy court there said that, first, the filing of a proof of claim, as well as the procedures for dealing with proofs of claim, are expressly provided for by the Bankruptcy Code and the Bankruptcy Rules. Next the court noted that the automatic stay "does not operate against the court with jurisdiction over the bankruptcy." *Sammon*, 253 B.R. at 680 (citing *Robert Christopher Assoc. v. Franklin Realty Group, Inc. (In re FRG, Inc.)*, 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990); *In re Briarwood Hills Assoc.*, 237 B.R. 479, 480 (Bankr. W.D. Mo. 1999); and *In re Bird*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999)). The court relied upon further, even broader statements of this principle. It noted that the stay does not apply to proceedings in the bankruptcy court having jurisdiction over the debtor, and that it "implicitly does not bar a party from commencing a proceeding against the debtor in the court where the bankruptcy petition is pending." *Id*. at 680–81. The court stated that the purposes of the automatic stay—to preserve assets and halt the race to the courthouse—"are not advanced by disallowing suits against the debtor in the court where the bankruptcy case is pending." *Id*. at 681. These reasons were the lead-in to the quoted language—"the automatic stay serves to protect the bankruptcy estate from

actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court"—from the *Campbell* opinion.

The third party action here was a "proceeding against the debtor in the court where the bankruptcy petition is pending"; it was a "legal action[] taken within the bankruptcy court" that has "jurisdiction over the debtor." *Sammon*, 253 B.R. at 680–81. As such, its filing met these judicially created exceptions to the application of the automatic stay. Such actions, according to *Sammon*, do not encroach on the purposes of the automatic stay.

As stated, the Court does not construe the Fifth Circuit's holding in *Campbell* to resolve the question here. And the Court does not agree with the broader statements of the exception set forth in *Sammon*, at least as applied here. Such an exception—i.e., allowing any action against a debtor in the bankruptcy court, without tripping the stay wire—fails to account for the most basic purpose of the automatic stay not mentioned in *Sammon*: the breathing room afforded a debtor from his creditors upon a bankruptcy filing. *See GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985); *In re Fine*, 285 B.R. 700, 702 (Bankr. D. Minn. 2002).[2] The Court also disagrees with the argument that Adkins, as a chapter 7 debtor, suffered no harm by being sued and made a party in the Morton Adversary. Such argument turns the automatic stay, the most basic protection afforded by a bankruptcy filing, on its head. McLoba's decision not to serve Adkins served only to mitigate the harm. Had Adkins not demanded dismissal, McLoba

---

[2]*See also In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors . . . .") (quoting *Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986)); *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) ("The general policy behind [§ 362(a)] is to grant complete, immediate, albeit temporary relief to the debtor from creditors . . . ."); *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) ("The purpose of the automatic stay provision is to afford the debtor a 'breathing spell' . . . ."); *Winters By and Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996) ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from its creditors.") (citations omitted); *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755 (9th Cir. 1995) (one of two broad purposes of the automatic stay is that it gives the debtor a "breathing spell" from its creditors).

would have no doubt pursued the litigation against Adkins; service would have been effected, thus forcing Adkins to respond, followed by discovery, trial, etc.  (This assumes the suit did not settle.)  Just because Adkins and his counsel proactively addressed the situation should not dim the automatic stay's application.

C.

The Court concludes that McLoba violated the stay.  The filing of the third party action against Adkins is a basic stay violation under § 362(a) of the Bankruptcy Code.  Section 362(k) provides that a willful stay violation concerning an individual debtor mandates an assessment of damages against the violator.  The question, then, is whether McLoba's conduct was willful. McLoba certainly acted intentionally in filing the third party action, and it was certainly aware of Adkins's bankruptcy filing.  It was also provided an opportunity to dismiss the action against Adkins without further recourse.  "Willfulness within the context of an alleged stay violation is almost universally defined to mean intentional acts committed with knowledge of the bankruptcy petition."  *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (internal citations omitted).  The Court is particularly troubled by McLoba's refusal to dismiss Adkins upon demand by Adkins's counsel.  McLoba's refusal shifted the burden on the issue to Adkins.  Given the basic protection afforded a debtor by the automatic stay upon a bankruptcy filing, and given the clear facial violation of the automatic stay here, the Court finds that Adkins was damaged and should be compensated.  His damages are the attorney's fees and expenses incurred in vindicating the protections afforded by the automatic stay.  The Court will therefore issue its order directing that Adkins's counsel submit, by affidavit, the attorney's fees and costs

incurred by Adkins in prosecuting this Motion; McLoba may object to the reasonableness of the amount of fees and expenses.

### End of Memorandum Opinion ###